JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff: **Montgomery County, PA**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: **Broward County, FL**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*:
SAMUEL LASSOFF, ESQ
SUITE 2343
5006 WELLINGTON AVE
VENTNOR, NJ 08406
609-375-7491

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [X] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [X] 4 |
| Citizen of Another State | [X] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | | | 835 Patent - Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | 840 Trademark | 460 Deportation |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | [X] 370 Other Fraud | 710 Fair Labor Standards Act | 880 Defend Trade Secrets Act of 2016 | 470 Racketeer Influenced and Corrupt Organizations |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability | 371 Truth in Lending | 720 Labor/Management Relations | | 480 Consumer Credit (15 USC 1681 or 1692) |
| [X] 190 Other Contract | 360 Other Personal Injury | 380 Other Personal Property Damage | 740 Railway Labor Act | **SOCIAL SECURITY** | 485 Telephone Consumer Protection Act |
| 195 Contract Product Liability | 362 Personal Injury - Medical Malpractice | 385 Property Damage Product Liability | 751 Family and Medical Leave Act | 861 HIA (1395ff) | 490 Cable/Sat TV |
| 196 Franchise | | | 790 Other Labor Litigation | 862 Black Lung (923) | 850 Securities/Commodities/ Exchange |
| | | | 791 Employee Retirement Income Security Act | 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | 864 SSID Title XVI | 891 Agricultural Acts |
| 210 Land Condemnation | 440 Other Civil Rights | **Habeas Corpus:** | | 865 RSI (405(g)) | 893 Environmental Matters |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee | | **FEDERAL TAX SUITS** | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 442 Employment | 510 Motions to Vacate Sentence | | 870 Taxes (U.S. Plaintiff or Defendant) | 896 Arbitration |
| 240 Torts to Land | 443 Housing/ Accommodations | 530 General | | 871 IRS—Third Party 26 USC 7609 | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment | 535 Death Penalty | **IMMIGRATION** | | |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other | **Other:** 540 Mandamus & Other | 462 Naturalization Application | | 950 Constitutionality of State Statutes |
| | 448 Education | 550 Civil Rights | 465 Other Immigration Actions | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332(d)(2), 4(h)(1)(A), N.J. CT. R. 4:4-4. 60.

Brief description of cause:
Fraud, Unjust Enrichment, Conversion, Breach of Contract

## VII. REQUESTED IN COMPLAINT:

[X] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** $500,000,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*
JUDGE _____    DOCKET NUMBER _____

DATE: 8/29/23

SIGNATURE OF ATTORNEY OF RECORD: Samuel Lassoff, Esq

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

LASSOFF LAW LLC
SAMUEL LASSOFF, ESQ
SUITE 2343
5006 WELLINGTON AVE
VENTNOR, NJ 08406
609-375-7491
LAWFIRM25@AOL.COM

COUNSEL FOR PLAINTIFF AND THE PROPOSED CLASS

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SAMUEL LASSOFF, individually and on behalf of all others similarly situated, Plaintiffs, vs. HARD ROCK INTERNATIONAL INC., HARD ROCK CAFE INTERNATIONAL (USA), INC., SEMINOLE HARD ROCK SUPPORT SERVICES, LLC, BOARDWALK 1000, LLC d/b/a HARD ROCK HOTEL & CASINO ATLANTIC CITY, Defendants.** | Civil Action No.: 1:23-cv-12407<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# **TABLE OF CONTENTS**

I. DEFENDANTS; CO-CONSPIRATORS/ADDITIONAL DEFENDANTS ............... 4

II. PLAINTIFFS ................................................................................................... 5

III. HISTORICAL BACKGROUND ..................................................................... 6

IV. CLASS ALLEGATIONS ............................................................................... 11

V. VIOLATION OF STATE CONSUMER FRAUD ACTS ............................ 13

VI. BREACH OF CONTRACT .......................................................................... 13

VII. CONVERSION .............................................................................................. 13

VIII. UNJUST ENRICHMENT ............................................................................. 14

IX. FRAUDULENT CONCEALMENT & TOLLING ...................................... 14

X. JURISDICTION AND VENUE .................................................................... 15

XI. REQUEST FOR RELIEF ............................................................................. 17

XII. JURY TRIAL DEMAND .............................................................................. 18

# LOCAL CIVIL RULE 10.1 STATEMENT

Pursuant to Local Civil Rule 10.1(b), the required information for Plaintiff's counsel of record is provided above on the first page of the Complaint.

Pursuant to Local Civil Rule 10.1(a), the names and addresses of the Parties to this action are:

1. Plaintiff Samuel Lassoff resides in Pennsylvania.

2. Defendant Hard Rock International Inc. has its principal place of business at 5701 Stirling Road, Davie, Florida 33314.

3. Hard Rock Cafe International (USA), Inc. operates and manages the Hard Rock Hotel & Casino Atlantic City 1000 Boardwalk Atlantic City NJ 08401-7415, among other Hard Rock casinos in the United States.

4. Defendant Seminole Hard Rock Support Services, LLC has its principal place of business at 5701 Stirling Road, Davie, Florida 33314.

5. Defendant Boardwalk 1000, LLC d/b/a Hard Rock Hotel & Casino Atlantic City has its principal place of business at 1000 Boardwalk, Atlantic City, New Jersey 08401.

Plaintiff brings this action individually and on behalf of a class of all others similarly situated ("Plaintiffs") against Defendants HARD ROCK INTERNATIONAL INC., HARD ROCK CAFE INTERNATIONAL (USA), INC., SEMINOLE HARD ROCK SUPPORT SERVICES, LLC, BOARDWALK 1000, LLC d/b/a HARD ROCK HOTEL & CASINO ATLANTIC CITY ("Defendants"), and alleges the following.

## DEFENDANTS

1. Defendant Hard Rock International Inc. has its principal place of business at 5701 Stirling Road, Davie, Florida 33314. The Seminole Tribe of Florida has wholly owned Hard Rock International since 2006. According to its website, "Hard Rock International is one of the most globally recognized companies with venues in over 70 countries spanning 265 locations that include owned/licensed or managed Casinos." The website also notes that "Hard Rock has solidified its place as one of the world's leading casino operators."

2. Defendant Hard Rock Cafe International (USA), Inc. operates and manages the Hard Rock Hotel & Casino Atlantic City 1000 Boardwalk Atlantic City NJ 08401-7415, among other Hard Rock casinos in the United States.

3. Defendant Seminole Hard Rock Support Services, LLC has its principal place of business at 5701 Stirling Road, Davie, Florida 33314. Defendant Boardwalk 1000, LLC d/b/a Hard Rock Hotel & Casino Atlantic City has its principal place of business at 1000 Boardwalk, Atlantic City, New Jersey 08401. (hereafter "Defendants"). This entity "was established in" December 2016 "to consolidate and coordinate multiple staff functions of Hard Rock International and Seminole Gaming," and acts as "the IT business partner for the multibillion-dollar global entertainment company." Seminole Hard Rock Support Services coordinates Hard Rock-branded casino-hotels' use of IT and revenue management systems including the offer and promotion algorithm platform.

4. Defendant Hard Rock Hotel & Casino Atlantic City is a New Jersey limited liability company headquartered in Atlantic City, New Jersey. Hard Rock Hotel & Casino Atlantic City has emailed, mailed and given offers and promotions directly to players throughout the United States during the class period. Hard Rock International and its Hard Rock Atlantic City casino-hotel, with active assistance and coordination by Seminole Hard Rock Support Services, have used an unpublished offer/promotion requirement and or requirement algorithm platform during the class period.

5. All Defendants listed above collectively are referenced as "Defendants".

## CO-CONSPIRATORS/ADDITIONAL DEFENDANTS

6. Various persons and entities unknown to Plaintiffs and not presently named as defendants in this action have participated as co-conspirators with Defendants in the alleged fraud/scheme

conduct and have performed acts and made statements in furtherance thereof.  Defendants experienced an extended period of financial hardship in the years leading up to the class period that incentivized them to conspire.  Numerous categories of facts exist tending to show collusion: (a) a radical change in business practices by the conspirators; (b) the conspirators' adoption of a common course of action; (c) opportunities for the conspirators to conspire; (d) exchange of competitively sensitive information among conspirators.  Likewise, the Atlantic City-based Casino-Hotel Defendants belong to and fund the city's casino-hotel trade association, The Casino Association of New Jersey ("CANJ"). Casino-Hotel Defendants' membership and control over this organization provides them with additional opportunity to exchange competitively sensitive information and strategies and agree on common courses of conduct and promotional schemes behind closed doors.

**PLAINTIFFS**

7.  Plaintiff Samuel Lassoff is a citizen and resident of Pennsylvania.  Plaintiff visited Atlantic City, New Jersey, and received numerous gift incentives, offers and promotions from one or more Defendants during the class period, including within the four years preceding the filing of this Complaint.

8.  On or about June 5th, 2023, Plaintiff gambled for several hours and lost over $729 at Hard Rock Casino in Atlantic City; and Plaintiff stayed overnight at the Hard Rock Atlantic City hotel.

9.  On or about June 7th, 2023, Plaintiff attempted to use a mailed promotion for $30 Freeplay and a Bluetooth Speaker gift, which he received in the mail from a direct mail offer from Defendants.  Plaintiff was informed by the Hard Rock Casino computer kiosk and again by Hard Rock Casino Players Club personnel/representative(s), two manager(s) and the executive level manager on duty that his "Pin was Invalid" and that his player account and comp dollars previously earned had been "FROZEN" for three months by the Defendants for failure to meet the (unpublished) gambling requirements for another previous promotion for $30 on or about June 6th.  Plaintiff had played and lost $729 dollars at the Defendants casino without a promotion from Defendants on or about June 5th, 2023.

10.  Plaintiff was defrauded by Defendants; and promised a promotion by Defendants if he gambled a certain amount; which Plaintiff did; and Plaintiff was tricked into playing more money with additional requirements for a promotion he would never receive.  Defendants thereafter defrauded and punished Plaintiff for redeeming their/his established gambler advertised PROMOTION.

11.  Defendants unjustly froze Plaintiffs previously earned COMP DOLLAR balances.

12.  Defendants unjustly froze Plaintiffs previously earned COMP DOLLAR balances despite Plaintiffs following all player account and promotional requirements in good faith.

13. Defendants fraudulently stole Plaintiffs previously earned COMP DOLLAR balances; despite Plaintiffs following all player account and promotional requirements in good faith.

14. Defendant maliciously, unjustly and or fraudulently stole and or froze Plaintiff's gambling PROMOTIONS.

**HISTORICAL BACKGROUND**

15. American casinos reported over $66 billion in gambling revenue in 2014. Older adults, aged 50 and over, view the casino as a place where they can socialize and escape from loneliness or grief. Older adults are an especially desirable demographic for the gaming industry because they fill the floors during off-peak hours, and casinos market to them aggressively, mailing and offering discounts on breakfast and lunch, free gifts, free slot play, free drinks and guarantees to "instantly win up to $1,000 Free Slot Play!". Casinos stage free daytime and nighttime entertainment. See e.g. 2011 Journal of Gambling Studies. The aggressive tactics Casinos use to lure patrons has alarmed addiction experts. Even casino patrons with no history of problem gambling can develop addictive behavior as they age. According to a 2005 study by David Oslin, a professor of psychiatry at the University of Pennsylvania Medical Center in Philadelphia, 1 in 11 adults over age 65 bet more than they could afford to lose in the previous year. The study suggests that more than 4 million older Americans could have a gambling problem. "That's a higher rate than we have for most diseases," he says. But the majority of everyday problem gamblers are camped out at the slot machines, which have evolved from the traditional one-armed bandits into highly sophisticated "electronic gaming machines" powered by proprietary computer chips. Slots are the biggest revenue producer for the industry and the most popular attraction for older gamblers: 3 out of 4 adults age 65 and older identify slots and video poker as their preferred form of gambling, according to a Harrah's survey. Slot machines are the most addictive form of casino gambling, enticing users to 'keep playing' until they've suffered major monetary losses. Slots are also the most addictive form of casino gambling, with the machines designed to maximize your "time on device" until you're out of money. See e.g. 2001 study by psychiatrist Hans Breiter, then of Massachusetts General Hospital in Boston, confirmed that the slot machine's nickname—"electronic crack"—is an apt one. Using MRI scanners, he found that in subjects playing slots, the brain's neural circuits fired in a way that was similar to those using cocaine. Several factors make gamblers particularly susceptible to addiction behavior as they age. Loneliness, social isolation and the loss of a spouse can encourage older people to seek relief in casinos. "For someone older who has been sick in the hospital or who is bored or lonely, that can have a big impact on them," says clinical geropsychologist Dennis McNeilly of the University of Nebraska Medical Center in Omaha. More serious age-related cognitive decline plays a role, too. See e.g. 2012 study by Michael Hornberger, a neuroscientist at the University of East Anglia in England stating cognitive issues can cause sufferers to lose their sense of money's value, and those with dementia often repeat a singular behavior such as pushing the button on a slot machine over and over. "They just keep playing as long as the casino lets them," Hornberger says. In some cases, compulsive gambling behavior can emerge as a side effect of medications. See e.g. Mark Stacy, a neurologist at the Duke University School of Medicine in Durham, N.C., noticed that several of his Parkinson's disease patients began reporting gambling problems after he had increased their doses of drugs called dopamine agonists, used to treat motor dysfunction. As many as 10 to 15 percent of Parkinson's patients who take the drugs exhibit this tendency, he says. "I believe these drugs do

cause gambling problems where they otherwise would not occur.  When you stop the drug, the behavior goes away."  The gambling industry actively targets vulnerable older patrons.  For every 20 older patrons who walk through their doors, says Les Berna national director of the advocacy organization Stop Predatory Gambling, the casinos want to "find a couple of them that they can take for all they're worth."  In addition to sending birthday cards and weekly mailings with ticket deals to shows and vouchers for free play and free gifts, Defendants assign a VIP host who contacted Plaintiffs to invite them back for various specials.  Casino hosts often lavish personal attention on high-roller patrons, asking about their health, reminding them to take their medicine and eating meals with them.  "The whole premise of a host is to extract as much money from that player as possible," says ex-host John-Talmage Mathis, who worked as VIP marketing director at the Boomtown Casino in Bossier City, La.  "For older people, the host becomes their friend, giving them attention they may not be getting from their children or friends."  Casinos award hosts bonuses based on how much the gambler loses.  "The losses of your player," Mathis says, "are your success."  As the Casino industry seeks to expand, more women are being enticed into casinos, and more are experiencing problems, according to a study published in the journal Psychiatry.  Many slot machines and casino promotions are now designed specifically for women players, who, sometimes feel bonded with their machines.  See e.g. 2012 National Victims Advocate for <u>Stop Predatory Gambling</u>.

16.  Atlantic City, known as "America's Playground" and "Monopoly City" at various times, is one of the nation's most iconic tourist destinations. It is known for its gambling, dining, entertainment, and lodging amenities—all available under one roof at any of its state regulated casino-hotels.  The city's appeal is enhanced by its famous beach and boardwalk located steps away from those resorts.  Atlantic City has consistently ranked as the nation's second largest casino market since obtaining a state-wide monopoly by  New Jersey voters in 1976.  The New Jersey Division of Gaming Enforcement and the New Jersey Casino Control Commission regulate the industry by overseeing the city's casino-hotels pursuant to authority granted them under the New Jersey Casino Control Act.  Guests stay at Atlantic City casino-hotels for the unmatched combination of attractions they offer: a full gambling experience with table games, slots and sports books; fine-dining restaurants, bars and nightclubs; exciting entertainment options like concerts, shows, and athletic events; full-service gyms, pools and spas; a wide array of retail shops; and conference facilities capable of hosting meetings of any size and duration.  Defendants highlight the attractions of its Hard Rock Atlantic City venue, claiming "there's no shortage of variety" and offering guests an experience "unlike any other."  Industry commentators and participants also recognize that casino-hotels constitute a relevant product market due to their unique business model.  Hard Rock Atlantic City President Anthony Faranca discussed his casino's position "in the Atlantic City market" in a November 2022 trade press article.  Defendants give/send/transmit  PROMOTIONS through phone, text, e-mail, regular US mailings and casino hosts.  Defendants also offer and give comps, gifts, COMP DOLLARS, offers, freeplay and promotions through their online phone application and Hard Rock Atlantic City Casino & Hotel websites "www.hardrockatlanticcity.com" and "hardrockatlanticcitywildcardrewards.com".

17. Hard Rock International coordinates its casino-hotels' use of IT and revenue management systems through Seminole Hard Rock Support Services, the IT business partner for the multibillion-dollar global entertainment company established in 2017 to consolidate and coordinate multiple staff functions of Hard Rock International and Seminole Gaming, which share corporate office space and are headed by Jim Allen.

**(a)  Hard Rock International and Seminole Hard Rock Support Services.**

Relevant personnel include Jim Allen, Hard Rock International Chair and CEO and Seminole Hard Rock Support Services CEO and Manager, Seminole Hard Rock Support Services Presidents Auggie Cipollini and Tracy Bradford, VP of Customer Care and Revenue Management Nadir Kiem, and VP of IT for Non-Gaming Systems Wendy Mertz.

- Jim Allen is regularly kept informed of Hard Rock Atlantic City's financial performance in all main areas by the property's President.
- In Auggie Cipollini's role as President of Support Services from early 2019 through mid-2022, he was responsible for IT, revenue management, workforce analytics, and property operations.  Bradford, who replaced Cipollini in this role upon his move to Hard Rock Atlantic City, has the same responsibilities in her position.  She also currently sits on Hard Rock International's Senior Leadership Committee along with Jim Allen, Joe Lupo, and others.
- Nadir Kiem, who began his role in early 2022, is a data-driven Customer and Operations Management Expert with 20+ year demonstrated history of success who Drives results via exceptional knowledge of system practices, precise functional mapping, and transparent communications of relationship between team roles and organizational results.  His core competencies include global service management and strategy development, capacity & budgetary planning & forecasting, highly communicative culture establishment, and A.I., robotics & technologies integration.
- Wendy Mertz began her position at Support Services in 2018.  During her tenure Mertz has been responsible for several multimillion-dollar system implementation and conversion projects.  She accomplished the task by choosing partners that were known entities, she said, "Because we're a global brand, it's important to select partners that work in many countries, not only because property employees are familiar with the product but also because the partners can provide guidance regarding local requirements and offer in-country support." Among Ms Mertz's industry predictions is that Artificial intelligence and data analytics will continue to expand.

**(b) Hard Rock Atlantic City.**

Relevant personnel include President George Goldhoff and former President Joe Lupo, General Manager Mike Sampson and former General Manager Anthony Faranca, Senior VP of Administration Auggie Cipollini, and VP of IT Don Kneisel.

- George Goldhoff, and Lupo before him, were responsible for the property's financial performance, including the monitoring of hotel room rates, occupancy levels and revenue, and reported directly to Hard Rock International's Chair and CEO. Goldhoff started in January 2023 after leading Hard Rock's Cincinnati casino-hotel, and, before that, managing MGM Resorts casino hotels. Lupo has over three decades of industry experience and closely oversaw all aspects of Hard Rock Atlantic City's successful entry and financial performance, including PROMOTIONS.
- Mike Sampson's and Anthony Faranca's position carries day-to-day management and performance responsibility for the Atlantic City property. Sampson claims thirty plus years of Casino Marketing and Operations experience in many areas with specialties in operational efficiency and Margin and Bottom Line enhancement. Before becoming GM, he served as the property's Senior VP of Operations and has been with Hard Rock Atlantic City since 2018, when he was a member of the Hard Rock Atlantic City preopening team. Before joining Hard Rock Atlantic City, he served as a VP of the Eastern Region for Caesar Entertainment. Faranca exclaims he has a comprehensive understanding of this market and has diverse management experience covering a wide range of disciplines including Gaming & Hotel Ops and Business Intelligence. He also served as a CANJ Board Member during his time at Hard Rock Atlantic City and previously worked for Caesars Entertainment.
- Auggie Cipollini joined Hard Rock Atlantic City in May 2022 to oversee finance, IT, purchasing and retail, after serving as President of Seminole Hard Rock Support Services and, before that, as Borgata Senior VP of Operations from early 2009 through late 2016. Kneisel, who also serves on the Gaming and Leisure Board of Directors, is recognized as one of the leaders when it comes to Information Technology in the gaming and hospitality industries. At Hard Rock Atlantic City and prior resorts, he has been responsible for developing an Information Technology strategy, constantly evaluating emerging technologies which will enhance revenue streams while managing the day-to-day operations of the Information Technology functions.

18. Defendants employ certain gaming machine "traps" where customers lose every time with no relationship to any mathematical odds. Most casino patrons are aware that mathematical odds are stacked against them in gambling. Nonetheless, adults frequent casinos to enjoy playing a game of chance with a reasonable chance to win.

19. Defendants use mail and email promotions, casino hosts, free rooms and meals, free gifts, and player comps to lure, entice and encourage casino gamblers to gamble more in there Casino. Defendants also have daily, monthly and yearly Casino player promotions, including but not limited to, mail and email promotions, for free casino slot/table play, free gifts and or additional compensation (comps).  ("PROMOTIONS").

20. Defendants know Plaintiffs earned COMP DOLLARS have and hold significant monetary value.  In many cases, including but not limited to this case, these gambler(s)/player(s)/customer(s) earned COMP DOLLARS represent a customer's current and or previous losses/gambling trips worth thousands and thousands of US dollars. ("COMP DOLLARS").

21. Defendants use COMP DOLLARS to compete with rival casinos, maintain customers, lure and entice players to gamble more frequently and in higher amounts in their Casino.

22. Defendants use Plaintiffs COMP DOLLARS to compete with rival casinos, maintain Plaintiffs players accounts and loyalty, lure Plaintiffs and entice Plaintiffs to gamble more frequently and in higher amounts in Defendants Casino.

23. Defendants have daily, monthly and yearly Casino player promotions for new gamblers which do not require the new player to have previous Casino play at Defendants Casino and or previous gambling history at Defendants Casino.  This new player promotion is strictly to entice new gamblers to/at Defendants Casino.

24. Defendants have daily, monthly and yearly Casino player PROMOTIONS for established gamblers which require the established gambler to have previous Casino play and or previous gambling history.  This established player PROMOTION is to entice new established gamblers to Defendants Casino.

25. An example of Defendants established gambler PROMOTIONS include, but is not limited to, the "ROCK ROYALTY" Players Card account promotion. ("ROCK ROYALTY").

26. Defendants have daily, monthly and yearly Casino player promotions for their current gambler patrons which do **NOT** require the player to have previous Casino play at Defendants Casino and or previous gambling history at Defendants Casino.  This current patron player promotion is encourage continued gambling and good will at Defendants Casino.

27. Defendants have daily, monthly and yearly Casino player promotions for their current gamblers which REQUIRE the established  player to have both previous Casino play at Defendants Casino and or previous gambling history at Defendants Casino.  This established player promotion with restrictions is to entice established patron gamblers to gamble higher and higher additional sums of money and obtain bigger losses.

28.  Defendants intentionally, fraudulently and maliciously do NOT publish their requirements for their established gambler PROMOTIONS.

29.  Defendants intentionally, fraudulently and maliciously do NOT publish their requirements for their established gambler promotions to deceive established gamblers into gambling more money and obtain bigger losses in their Casino.  These additional gambling losses far exceed the value of any free gift or free play promotion.

30. Defendants require that in order for established Casino patrons such as Plaintiffs to continue to receive their PROMOTIONS and keep their account active (unfrozen) they must maintain certain unpublished amounts of gambling each and every gambling visit/trip to Defendants Casino.

31.  Defendants mail and or email PROMOTIOMS for free casino slot play and free gifts to their established patrons based on their previous gambling trips.

32.  Defendants PROMOTIONS for established gamblers are intentionally vague and unclear.

33.  Requirements for Defendants PROMOTIONS for established gamblers are intentionally vague and unclear.

34.   Requirements for Defendants PROMOTIONS for established gamblers are unpublished.

35.  Defendants allowed established casino patrons three (3) strikes against their unpublished and arbitrary promotional requirements before they suspended/froze/freeze an established players account for (3) months; 90 day suspension.  A three (3) month (ninety) 90 day suspension included an established player losing access to his/her account; no use of their previously earned comp or COMP DOLLARS; no free rooms; and no free parking.

36.  Plaintiffs who sought clarification of the requirements for established gambler PROMOTIONS were told by Defendants promotional management to gamble at least "two times the amount of free play" or their established player account would be suspended/frozen for 3 months and or their comps completely confiscated by Defendants in bad faith.

37.  Plaintiffs who followed the unpublished verbal requirements stated by Defendants promotional management were still fraudulently and maliciously suspended/frozen from their previously earned comp and COMP DOLLARS.

38.  To participate in Defendants offers, free rooms, promotions and/or comp programs/system customers must insert their players cards each time they gamble at a casino table and or slot machine/machine.  Customers must use their offer/freeplay/comp or promotion, cash, tokens, and/or coins to gamble at Defendants casino.

39. In order to use Defendants monthly mailing Offers, free gift and or FreePlay promotion, an established customer/player must earn their PROMOTIOIN from previous gambling trips.

40. After a gaming session, established player Plaintiffs "cash out" unused credits on the machine and go to the cashier.

41. Plaintiff visited the Hard Rock Casino in Atlantic City between May and June, 2023, and/or among other times.

42. Defendants fraudulent deceptive business practice compounded Plaintiff's overall losses.

**CLASS ALLEGATIONS**

43. Plaintiffs seek certification under Fed. R. Civ. P. 23 of the following classes: Pennsylvania Class: All persons in the State of Pennsylvania who wagered at Hard Rock casinos in New Jersey and the United States during the statutes of limitations for each cause of action alleged. Consumer Fraud Multi-State Class: All persons in the States of New York, New Jersey, North Dakota, Connecticut, South Dakota, North Carolina, South Carolina, Nebraska, Rhode Island, Maine, Wyoming, Kansas, Utah, Idaho, Alaska, West Virginia, and Montana, who wagered at Hard Rock casinos in New Jersey and the United States during the statutes of limitations for each cause of action alleged.

44. Common questions of issues, law, and fact predominate and include whether Defendant's representations and practices were and are unlawful, deceptive, unfair and misleading and if Plaintiff and class members are entitled to damages.

45. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive practices, representations, omissions, and actions.

46. Plaintiff is an adequate representative because his interests do not conflict with other members.

47. No individual inquiry is necessary since the focus is only on Defendants practices and the class is definable and ascertainable.

48. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

49. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly. Pennsylvania Unfair Trade Practices and Consumer Protection Law 73 P.S. §§ 201-1 to 201-9.3, New York General Business Law ("GBL") §§ 349 and 350, Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") Fla. Stat. § 501.201 et. seq., and/or New Jersey Consumer Fraud Act, N.J.S.A., 56:8-1 et. seq. 43. Plaintiffs incorporate by reference all preceding paragraphs.

50. Defendant's business acts and practices and/or omissions are deceptive, unconscionable, unlawful, misleading and unfair under the above-identified consumer protection statutes.

51. By having unknown and arbitrary requirements for their PROMOTIONS, Defendants engaged in a conduct that is intentionally and maliciously designed to force/coerce/encourage the established gambling player/customer to make more and or higher wagers; and whereby sustain higher losses.

52. Defendants business practices and promotions are designed to have the customer insert and gamble an unknown and arbitrary amount of additional funds to keep Plaintiffs players account from being "FROZEN". The "Freezing" of Plaintiffs players account and prohibited use of their previously earned COMP DOLLARS amounts to a punitive taking of the customers previously earned money/rewards.

53. Plaintiff and members of the Class have incurred damages and suffered ascertainable losses of money as a result of Defendants actions.

## VIOLATION OF STATE CONSUMER FRAUD ACTS (CONSUMER FRAUD MULTI-STATE CLASS)

54. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair and deceptive practices.

55. The members of the Consumer Fraud Multi-State Class were harmed in the same way as Plaintiff, and may assert their consumer protection claims under the Consumer Fraud Acts of their States and/or the consumer protection statute invoked by Plaintiff.

## BREACH OF CONTRACT

56. Plaintiff and members of the Class entered into a contract with Defendants to make wagers with the understanding that all comps and COMP DOLLARS remaining in their account would be redeemed in full at the player's sole option, without imposing burdens and obstacles to doing so.

57. Plaintiff and members of the Class have fully performed all covenants, conditions and obligations required by them, except to the extent made impossible by the Defendants.

58. Defendants breached these contracts by failing to refund all previously earned comps and COMP DOLLARS in full.

59. As a direct and proximate cause of these breaches, Plaintiff and members of the Class have incurred significant financial damages.

## CONVERSION

60. Plaintiff and members of the Class paid money to Defendants for the opportunity to gamble and receive PROMOTIONS, comps, and COMP DOLLARS at Defendants premises.

61. These monies were converted to COMP DOLLARS that could be used to buy meals and merchandise and or make wagers at the Defendants casino.

62. All remaining comps and COMP DOLLARS that were not spent on purchases or converted to wagers were refundable by Defendants at any time.

63. Defendants unlawfully and wrongfully exercised dominion and control over Plaintiff's and class members' money by withholding and otherwise failing to pay COMP DOLLARS remaining on their players accounts.

64. Plaintiff and members of the Class have an ownership and/or possessory right in these monies as they are potentially un-wagered funds and or purchasing dollars belonging to the player.

65. Defendants conduct was intentional, wrongful, reckless, and outrageous.

66. In the alternative, if the conversion and/or misappropriation was not deliberate, it is the result of Defendants recklessness and gross neglect.

67. As a direct and proximate cause of these unlawful acts, Plaintiff and members of the Class have incurred significant financial damage.

**UNJUST ENRICHMENT**

68. Defendants fraudulently obtained Plaintiff's and members of the Class's extra gambling revenues, benefits and monies because they illegally froze and or kept the previously earned comps/COMP DOLLARS which already were earned, recorded and belonged exclusively to the established player/gambler Plaintiffs for use at their leisure, who seek restitution and disgorgement of inequitably obtained profits.

**FRAUDULENT CONCEALMENT & TOLLING**

69. Plaintiffs and the other members of the Class had neither actual nor constructive knowledge of the facts constituting their claim for relief. They did not discover, nor could have discovered through the exercise of reasonable diligence, the existence of Defendants' fraud/conspiracy until shortly before filing this Complaint. Defendants engaged in a secret and inherently self-concealing conspiracy that did not reveal facts sufficient to put Plaintiffs and the other Class members on inquiry notice. Defendants intentionally conducted their fraud/ scheme outside of public scrutiny. For example: Defendants regularly attended invitation-only industry events, where revenue management, pricing strategies, and best practices were discussed behind closed doors; and individual Casino Defendants had private communications and meetings to discuss PROMOTIONS. Defendants intentionally hid from Plaintiffs and the other Class members the requirements of their PROMPOTIONS. Defendants also affirmatively misrepresented through omissions, half-truths, and misrepresentations, how they determined PROMOTIONS and COMP

DOLLARS. Through Defendants knowing and active concealment of their misconduct from their gambling patrons, Plaintiffs and the other Class members did not receive information that should have put them, or any reasonable consumer standing in their shoes, on sufficient notice of potential collusion worthy of further investigation. The Atlantic City Casino-Hotel COMP DOLLAR and PROMOTIONS market is not exempt from antitrust regulation. Plaintiffs exercised reasonable diligence. Plaintiffs and the other members of the Class could not have discovered Defendants' alleged misconduct at an earlier date by the exercise of reasonable diligence because of the deceptive and secretive conduct taken by Defendants and their co-conspirators to conceal their misconduct. Due to Defendants' fraudulent concealment of their wrongful conduct, the running of the statute of limitations has been tolled and suspended with respect to the claims and rights of action of Plaintiffs and the other Class members as a result of the conspiracy, including all parts of the class earlier in time than the four years immediately preceding the date of this Complaint.

## **JURISDICTION AND VENUE**

70. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

71. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

72. Plaintiff is a citizen of Pennsylvania.

73. Defendant is a Florida corporation with a principal place of business in Florida.

74. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendants are a citizen.

75. The members of the class Plaintiff seeks to represent are more than 1000, affected persons of the proposed class are geographically dispersed located throughout the United States; joinder of all members in this action is impracticable.

76. The Class members, moreover, can be readily identified and notified in an administratively feasible manner using, among other information, the electronic transactional records of Defendants.

77. Venue is in this District is proper under the Federal Rules of Civil Procedure (FRCP). This Court has personal jurisdiction over Defendants under Federal Rule of Civil Procedure 4(h)(1)(A), and New Jersey's long-arm statute, N.J. CT. R. 4:4-4. 60. Defendants, directly or through their divisions, subsidiaries, predecessors, agents, or affiliates, may be found in and transact business in the forum state, including the distribution, mailing and or emailing of

promotions, offers, comps, gifts, COMP DOLLARS and their requirements. Defendants, directly or through their divisions, subsidiaries, predecessors, agents, or affiliates, engage in interstate commerce in the distribution, mailing and or emailing of promotions, offers, comps and their requirements. Venue is also proper in this District pursuant to the federal venue statute (28 U.S.C. § 1391), because one or more Defendants maintain business facilities, have agents, transact business, and are otherwise found within this District and certain unlawful acts alleged herein were performed and had effects within this District.

78. Plaintiff will fairly and adequately will protect and represent the interests of Class members. The interests of Plaintiff and Plaintiffs' counsel are fully aligned with, and not antagonistic to, the interests of the Class members. Plaintiff is willing and able to dispatch the duties incumbent upon a class representative to protect the interests of all Class members. In addition, Plaintiff's counsel has experience successfully prosecuting complex antitrust class actions and possesses the necessary resources to vigorously litigate the case to the greatest extent necessary for the Class.

79. There are multiple questions of law and fact that are common to the Class and that the Class can prove with evidence common to all Class members.

80. Plaintiffs are represented by counsel who are experienced and competent in the prosecution of complex antitrust and unfair competition class actions.

81. Questions of law and fact common to the members of the Class will predominate over any individualized questions of law or fact. Defendants have acted and refused to act on grounds generally applicable to the Class.

82. In cases like this one, the common question of law and fact by itself has been held to predominate over any possible individualized issues, thus warranting certification. The same holds true here.

83. Class treatment is the superior method for the fair and efficient adjudication of this controversy. It will allow for the scores of Class members to prosecute their common claims, and for Defendants to defend themselves against these claims, in front of a single court simultaneously and efficiently before ultimately reaching resolution without unnecessary duplication of effort and expense that separate actions would present. The benefits of proceeding with this procedural mechanism, including providing injured persons with a method of obtaining redress for claims that might not be practicable for them to pursue individually, substantially outweigh any difficulties that may arise in the management of this case as a class action.

# REQUEST/PRAYER FOR RELIEF

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary, statutory and/or punitive damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class of all others similarly situated, respectfully request/pray judgment against Defendants as follows:

A. The Court determine that this action may be maintained as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, appoint Plaintiffs as Class Representatives and Plaintiffs' counsel of record as Class Counsel, and direct that notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to the Class once certified;

B. The unlawful conduct, gross negligence, conversion, unjust enrichment, theft, fraud, breach of contract, conspiracy or combination alleged herein be adjudged and decreed as stated supra; and incorporated as if written in its entirety hereto;

C. Plaintiffs and the Class recover damages, to the maximum extent allowed under the applicable laws, and that a joint and several judgment in favor of Plaintiffs and the members of the Class be entered against Defendants in an amount to be trebled under applicable law;

D. Defendants, their affiliates, successors, transferees, assignees, officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from continuing, maintaining or renewing the conduct, conspiracy, or combination alleged herein, or from entering into any other conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

E. Plaintiffs and the members of the Class be awarded pre- and post-judgment interest in the maximum amount and to the maximum extent permitted by law;

F. Plaintiffs and the members of the Class recover their costs of suit and reasonable attorneys' fees to the maximum extent allowed by law; and

G. Plaintiff and the members of the Class be awarded any other relief as the case may require and the Court may deem just and proper.

Respectfully submitted:    Dated: August 29th, 2023    SAMUEL LASSOFF   /S

# JURY TRIAL DEMAND

Plaintiffs demand a jury trial under Federal Rule of Civil Procedure 38(b) on all issues.

Dated: August 29th, 2023          <u>SAMUEL LASS0FF    /S</u>

# LOCAL CIVIL RULE 11.2 CERTIFICATION

Pursuant to Local Civil Rule 11.2, I hereby certify that the matter in controversy is not related to any other civil action.

I hereby certify that the following statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: August 29th, 2023          <u>SAMUEL LASS0FF      /S</u>